**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ZACHERY KEITH TURNER,

    Petitioner,

vs.          Case No.:  3:17-cv-888-J-32MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

## ORDER

### I. Status

  Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) and accompanying exhibits (Docs. 1-1 through 1-10, "Pet. Ex. __."). He challenges a state court (Duval County, Florida) judgment of conviction and sentence for lewd and lascivious battery on a person less than 16 years of age. Respondent opposes the Petition. (Docs. 25, 28). Petitioner filed a reply brief (Doc. 30), and supplemental authority (Docs. 37, 41). The case is ripe for review.

### II. Procedural Background

  On April 14, 2011, Petitioner was charged by information with one count of lewd and lascivious battery on a person less than 16 years of age, in violation

of Florida Statutes Section 800.04(4). (Resp. Ex. B1 at 14).[1] Petitioner was accused of sexually battering a runaway girl named D.S., whom he met while working as a cab driver. Petitioner sought to represent himself at trial and, after a hearing pursuant to <u>Faretta v. California</u>, 422 U.S. 806 (1975), the trial court ruled Petitioner competent to waive the right to an attorney. (Resp. Ex. B7 at 20-38). As such, Petitioner proceeded to trial <u>pro se</u>, but with the assistance of standby counsel. A jury trial was held on September 30, 2011 (Resp. Ex. B3), after which the jury found Petitioner guilty as charged (Resp. Ex. B1 at 66). On November 22, 2011, the trial court sentenced Petitioner to the maximum sentence of 15 years in prison. (<u>Id.</u> at 122-31, 204).

Petitioner was represented by counsel on direct appeal, who initially filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 739 (1967). (Resp. Ex. B9). The First District Court of Appeal (First DCA) ordered additional briefing on the following issue: "whether the trial court abused its discretion by failing sua sponte to hold a competency hearing after counsel notified the court that she scheduled a competency evaluation for appellant and requested a continuance on that basis, which the court granted." (Resp. Ex. B12). Counsel for both sides filed briefs arguing the merits of that issue. (Resp. Ex. B13; Resp. Ex. B14A).

---

[1]     Unless otherwise noted, citations to Respondent's exhibits refer to the Bates-stamp page number on the bottom-center of the page. If a Bates-stamp page number is unavailable, the citation refers to the page number in the upper-righthand corner.

Ultimately, the First DCA affirmed Petitioner's conviction and sentence without a written opinion. Turner v. State, 121 So. 3d 552 (Fla. 1st DCA 2013).

Thereafter, Petitioner filed several post-conviction motions and petitions in state court, none of which succeeded.[2] He filed two Petitions Alleging Ineffective Assistance of Appellate Counsel (IAAC) in the First DCA, pursuant to Florida Rule of Appellate Procedure 9.141. (Resp. Ex. C1 (First Petition Alleging IAAC); Resp. Ex. D1 (Second Petition Alleging IAAC)). The First DCA denied both petitions "on the merits." Turner v. State, 145 So. 3d 890 (Fla. 1st DCA 2014); Turner v. State, 164 So. 3d 699 (Fla. 1st DCA 2015).

On June 8, 2015, Petitioner filed a motion for post-conviction relief in the trial court, pursuant to Florida Rule of Criminal Procedure 3.850, raising two claims of trial court error and one claim of ineffective assistance of trial counsel. (Resp. Ex. E2 at 139-73). He raised five more claims of trial court error through two motions for leave to amend. (Resp. Ex. E1 at 1-22 (First Motion for Leave to Amend); Resp. Ex. E2 at 174-94 (Second Motion for Leave to Amend)). The trial court denied relief on all eight grounds. (Resp. Ex. E1 at 25-37).

Petitioner appealed the denial of the Rule 3.850 motion to the First DCA. The First DCA affirmed without a written opinion. Turner v. State, 225 So. 3d 807 (Fla. 1st DCA 2017). The federal habeas petition followed.

---

[2]     For a more detailed procedural history, see Respondent's brief (Doc. 25 at 2-6).

### III.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

5

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with

6

powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. —, —, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. —, —, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from

---

[3]     <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4]     <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice – that is, the incarceration of one who is actually innocent – otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his

---

5      <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

"Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV. Petitioner's Claims and Analysis

### A. Ground One

Petitioner claims the trial court erred by failing to hold a competency hearing before trial or to have him evaluated by at least two experts, despite having grounds to believe he was incompetent. (Doc. 1 at 7-9). Petitioner states that he was evaluated by only one expert and that no competency hearing was held. Petitioner concludes that the "trial court's failure to conduct a full competency hearing constitutes an abuse of discretion violating the established mandatory procedures set forth in Fla. R. Crim. P. 3.210(b) and the Petitioner's right to due process under the 14th Amendment . . . ." (Id. at 8-9).[6]

---

[6]     To the extent Petitioner claims that the trial court failed to comply with Florida Rule of Criminal Procedure 3.210(b), "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (internal quotation marks and citations omitted).

Respondent argues that Petitioner procedurally defaulted this claim because allegations of trial court error must be preserved in the trial court and raised on direct appeal. (Doc. 25 at 9-17). Respondent argues that Petitioner failed to preserve this issue for appellate review because he neither requested a competency hearing nor objected to the trial court's failure to hold one. Alternatively, Respondent argues that the First DCA correctly denied the claim on the merits. (Id. at 33-40).

Before trial and prior to Petitioner waiving his right to trial counsel, Petitioner's public defender moved to continue trial so Petitioner could undergo a competency evaluation, which the trial court allowed. (Resp. Ex. B5 at 20). Dr. Larry Neidigh evaluated Petitioner and determined he was competent to stand trial. (Resp. Ex. E2 at 168-73). While it does not appear that the report was submitted to the trial court, Dr. Neidigh concluded that Petitioner "met all competency criteria and it is my opinion that he should be adjudicated Competent to Proceed." (Id. at 173). After the evaluation, neither Petitioner nor his attorney requested a competency hearing. During his Faretta hearing (Resp. Ex. B7 at 20-38), the court asked about the competency evaluation and Petitioner advised he had never been diagnosed with or treated for any mental illness (id. at 31). After the Faretta colloquy, the judge found Petitioner "competent to waive counsel" and that he did so knowingly and intelligently.

(Id. at 34-35). Neither Petitioner nor his public defender objected to the court not holding a competency hearing.

On direct appeal, after appellate counsel filed an Anders brief, the First DCA ordered additional briefing on "whether the trial court abused its discretion by failing sua sponte to hold a competency hearing." (Resp. Ex. B12). Both sides filed briefs arguing the merits of the issue. In its answer brief, the State remarked that Petitioner had failed to preserve the claim for appellate review. (Resp. Ex. B14A at 3, 6). However, because the First DCA ordered the parties to brief whether the trial court erred by not holding a competency hearing, the State devoted most of its brief to the merits. (Id. at 3-4, 5-10). The First DCA affirmed the judgment without explanation. Turner, 121 So. 3d 552.

Respondent's argument that Petitioner procedurally defaulted Ground One rests on the assumption that the First DCA denied the appeal on procedural grounds. However, the First DCA more likely reached the merits of the issue. A state court that denies relief on a federal claim is presumed to have "adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99. The First DCA itself ordered the parties to brief "whether the trial court abused its discretion by failing sua sponte to hold a competency hearing." (Resp. Ex. B12). Both parties focused on the merits of the issue in their briefs. (Resp. Ex. B13; Resp. Ex. B14A). Although the State asserted that the competency hearing

claim was unpreserved for appellate review (Resp. Ex. B14A at 3, 6), it dedicated most of its brief to arguing the merits because, as it recognized, the First DCA ordered merits briefing (id. at 5-10). The State's assertion that the claim was unpreserved for appellate review was presented as a passing remark more than a substantive argument. Thus, it is more likely the First DCA disposed of the competency hearing claim on the merits rather than based on a procedural bar. As such, the Court concludes that Ground One was exhausted. The relevant state court decision, for purposes of applying AEDPA's standard of review, is the First DCA's decision on direct appeal.[7]

That said, the First DCA's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (d)(2). "The Due Process Clause . . . guarantees a right to a competency hearing when the

---

[7]    Petitioner also raised a competency claim in his pro se "Motion for Habeas Corpus Under Rule 3.820," which he filed in the trial court on December 31, 2013. (Resp. Ex. J9). Petitioner did not identify the claim as arising under federal law, but instead argued that the trial court erred under Rule 3.210(b) by not appointing two competency experts and not holding a competency hearing. (Id.). The state court denied the Rule 3.820 motion and Petitioner did not appeal that decision. (See Resp. Ex. J5). Petitioner then realleged substantially the same claim in ground one of his Rule 3.850 motion. (Resp. Ex. E2 at 140-43). The trial court denied the claim as procedurally barred because under Florida law, claims of trial court error cannot be raised on post-conviction review. (Resp. Ex. E1 at 27-28). The First DCA summarily affirmed the denial of Rule 3.850 relief. Turner, 225 So. 3d 807.
    Although the state court applied a procedural bar to the competency hearing claim on post-conviction review, the relevant state court decision remains the First DCA's decision on direct appeal.

court learns of information that raises a bona fide doubt regarding the defendant's competence." United States v. Cometa, 966 F.3d 1285, 2020 WL 4432259, at *5 (11th Cir. Aug. 3, 2020) (internal quotation marks and citation omitted); see also James v. Singletary, 957 F.2d 1562, 1570 (11th Cir. 1992) (comparing substantive due process competency claims and claims regarding the failure to hold a competency hearing). "To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts raising a bona fide doubt regarding the petitioner's competency to stand trial." Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (internal quotation marks and citation omitted). Three factors influence whether the trial court erred by not holding a competency hearing: (1) whether the defendant evidenced irrational behavior before the court; (2) whether his demeanor indicated a lack of competence; and (3) whether the court was aware of any prior medical opinion regarding the defendant's competence. Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987) (citing Drope v. Missouri, 420 U.S. 162, 172 (1975)).

The fact alone that defense counsel requested a continuance for Petitioner to undergo a competency evaluation, weighed against the entire record, was not enough to raise a bona fide doubt about Petitioner's competence to stand trial. See Cometa, 966 F.3d 1285, 2020 WL 4432259, at *6 (rejecting claim that the district court was required to hold a competency hearing after defendant's lawyer voiced concerns about defendant's competency at trial). There were no

indicia that Petitioner was incompetent to proceed. For one, Petitioner displayed a rational understanding of the proceedings, such as during the <u>Faretta</u> hearing, where he demonstrated that he understood his rights, the charges against him, and the consequences of a conviction. (Resp. Ex. B7 at 20-38). Second, there is no indication Petitioner behaved bizarrely during the proceedings, such that the court had reason to doubt his competence. Third, after conducting a competency evaluation, Dr. Neidigh found that Petitioner was competent to stand trial. (Resp. Ex. E2 at 168-73). When the court inquired about the competency evaluation at the <u>Faretta</u> hearing, Petitioner advised he had not been treated for or diagnosed with any mental illness. (Resp. Ex. B7 at 31). Nor did Petitioner or his attorney request a competency hearing.

Under these facts, the First DCA reasonably could have determined that the trial court did not err by failing to <u>sua</u> <u>sponte</u> conduct a competency hearing. Thus, Ground One does not warrant relief under 28 U.S.C. § 2254(d).[8]

---

[8]    In his second notice of supplemental authority, Petitioner points to a Florida Fourth DCA case, <u>Johnson v. State</u>, 254 So. 3d 1035 (Fla. 4th DCA 2018), where the appellate court reversed the trial court for not holding a competency hearing after it ordered an evaluation, and remanded for the trial court to make a retroactive assessment of whether the defendant was competent. (Doc. 41). That case, which relied on Florida law, does not establish that the First DCA's decision here was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

### B. Ground Two

Petitioner claims that appellate counsel gave ineffective assistance by failing to raise a fundamental error claim on direct appeal. (Doc. 1 at 11-13). According to Petitioner, the trial court violated his due process rights "by failing to conduct a full <u>Faretta</u> hearing before allowing the Petitioner to represent himself at trial." (<u>Id.</u> at 11). This error, Petitioner contends, compounded the issue of his alleged incompetency. Petitioner argues that appellate counsel performed deficiently by failing to brief this issue on direct appeal. He further contends that the First DCA's rejection of this claim was an unreasonable application of clearly established federal law.

As noted earlier, appellate counsel initially filed an <u>Anders</u> brief on direct appeal (Resp. Ex. 11), but the First DCA ordered counsel to brief one issue: whether the trial court erred by failing to hold a competency hearing <u>sua</u> <u>sponte</u> (Resp. Ex. B12). Appellate counsel filed a merits brief, arguing that the trial court erred by not conducting a competency hearing. (Resp. Ex. B13). However, appellate counsel did not challenge the adequacy of the <u>Faretta</u> colloquy. The First DCA affirmed Petitioner's conviction and sentence without a written decision. <u>Turner</u>, 121 So. 3d 552.

In his second pro se Petition Alleging IAAC, filed in the First DCA on January 16, 2015, Petitioner claimed that appellate counsel was ineffective for not challenging the adequacy of the <u>Faretta</u> hearing. (Resp. Ex. D1 at 12-17).

17

The First DCA rejected the claim, stating only that "[t]he petition alleging ineffective assistance of appellate counsel is denied on the merits." <u>Turner</u>, 164 So. 3d at 700. As such, Respondent concedes that Petitioner exhausted Ground Two. (Doc. 25 at 17). However, Respondent argues that the claim does not merit relief under 28 U.S.C. § 2254(d). (<u>Id.</u> at 40-43).

The Court agrees. <u>Strickland</u>'s two-part test, deficient performance and prejudice, applies when reviewing the effectiveness of appellate counsel. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). In <u>Faretta v. California</u>, the Supreme Court held that a defendant in a criminal proceeding has the right to waive counsel and to represent himself, provided he does so "competently and intelligently." 422 U.S. at 835. A defendant must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." <u>Id.</u> (internal quotation marks and citations omitted). The "competence that is required of a defendant seeking to waive his right to counsel is the competence to <u>waive the right</u>, not the competence to represent himself." <u>Godinez v. Moran</u>, 509 U.S. 389, 399 (1993) (emphasis in original). "In <u>Godinez v. Moran</u>, the Supreme Court held that the standard for determining competency to waive the right to an attorney is the same as the standard for determining competency to stand trial." <u>Muhammad v. Sec'y, Dep't of Corr.</u>, 554 F.3d 949, 956 (11th Cir. 2009) (citing <u>Godinez</u>, 509 U.S. at 396-97). That is, the defendant must have

18

"'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and ha[ve] 'a rational as well as factual understanding of the proceedings against him.'" <u>Godinez</u>, 509 U.S. at 396 (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960)).

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to … waive his right to counsel. In addition to determining that a defendant who seeks to … waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.

<u>Id.</u> at 400 (citations omitted).

Appellate counsel reasonably could have decided not to challenge the adequacy of the <u>Faretta</u> hearing. Petitioner alleges that the trial court only "conducted a limited hearing and found that because the Petitioner was 46 years of age; spoke English; had attained the eighth grade; and was not under the influence of any drugs or alcohol, he was competent to waive his right to counsel and represent himself." (Doc. 1 at 12). But this mischaracterizes the scope of the trial court's <u>Faretta</u> inquiry.

The record shows that, over the course of 16 transcript pages, the trial judge queried Petitioner about his decision to represent himself. (Resp. Ex. B7 at 20-35). The court reminded Petitioner he had the right to a court-appointed attorney, free of charge. (<u>Id.</u> at 20, 32). The court advised Petitioner about the advantages of proceeding with a lawyer (<u>id.</u> at 21-23), and the disadvantages of

proceeding without a lawyer (<u>id.</u> at 23-27). While informing Petitioner about these considerations, the court touched on the intricacies of trying a case, such as complying with the rules of evidence and courtroom procedure. Petitioner stated that he understood all these things. (<u>Id.</u> at 27). The court ensured that Petitioner understood the charges against him and the consequences of a conviction. (<u>Id.</u> at 27-30). The court ascertained that Petitioner was 46 years old, able to read and write in English, that he had completed the eighth grade, and that he was not under the influence. (<u>Id.</u> at 31). The court confirmed that Petitioner had undergone a competency evaluation (in which Dr. Neidigh found him competent), and Petitioner advised he had not been diagnosed with or treated for any mental illness. (<u>Id.</u>). The court also ensured that Petitioner did not have any speech, hearing, or visual impairments. (<u>Id.</u> at 31-32).

Following this detailed discussion, Petitioner assured the court that he did not want to be represented by counsel (<u>id.</u> at 33), and that he made this choice voluntarily (<u>id.</u> at 32). The court offered to appoint standby counsel to assist Petitioner – which he accepted – but reminded him that he remained solely responsible for organizing and presenting his case. (<u>Id.</u> at 33-34). The court concluded that Petitioner was "competent to waive counsel and he has done so freely, knowingly, intelligently and voluntarily understanding the consequences of that." (<u>Id.</u> at 34-35). Petitioner did not object to that finding.

The record shows that Petitioner was competent to waive the right to counsel, <u>Faretta</u>, 422 U.S. at 835, and that he made the waiver knowingly and voluntarily, <u>Godinez</u>, 509 U.S. at 400. As such, appellate counsel reasonably could have decided not to raise this (unpreserved) issue on direct appeal, which would have required her to meet the heightened standard of fundamental error. <u>See</u> <u>Harrell v. State</u>, 894 So. 2d 935, 941 (Fla. 2005) (issues not preserved by contemporaneous objection may only be reviewed for fundamental error). The First DCA's rejection of the ineffective assistance claim was not contrary to clearly established federal law, did not involve an unreasonable application of it, nor was the decision based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (d)(2). Relief on Ground Two is due to be denied.

### C. Ground Three

Next, Petitioner claims the trial court erred under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), and the Sixth Amendment by allowing testimony that violated his right to confront the accuser. (Doc. 1 at 14-15). The victim, D.S., did not testify at trial because neither Petitioner nor the State could find her, despite an investigator's efforts to locate D.S. at her high school and last known residence. (<u>See</u> Resp. Ex. B2 at 109-11; Resp. Ex. B3 at 121-27). However, Rachel Thomas, a nurse practitioner with the Child Protection Team, testified about statements D.S. made to her during a rape evaluation. (Resp. Ex. B3 at 195-207). Ms. Thomas testified that D.S. told her she had gone to a

hotel with a man in his 40's, where they had sex three times. (Id. at 201-03). Petitioner (who represented himself) did not object to Ms. Thomas's testimony. Petitioner declined to cross-examine Ms. Thomas as well. (Id. at 207).

Petitioner now claims that because he was denied the opportunity to cross-examine D.S., he was denied his confrontation rights under Crawford. Petitioner states that had he been able to confront D.S., "the jury and the court would have learned that the victim was a runaway who was prostituting to support herself; told the Petitioner that she was 18 years old; that she called the Petitioner for a ride; and that the sex was consensual." (Doc. 1 at 15).

Respondent argues that Petitioner procedurally defaulted this claim because he failed to raise an objection at trial and failed to raise the issue on direct appeal. (Doc. 25 at 17-21). Alternatively, Respondent argues that the claim was reasonably denied on the merits. (Id. at 43-51).

Petitioner presented the Crawford claim in ground six of his Rule 3.850 motion, which he added by motion for leave to amend. (Resp. Ex. E1 at 13-15). The trial court denied the claim as procedurally barred and meritless. (Id. at 33-35). The court explained:

> In his sixth ground for relief, Defendant argues his right to confront his accuser under Crawford v. Washington, 541 U.S. 36 (2004), was violated when Ms. Rachel Thomas of the Child Protection Team testified about what the victim told her during the sexual assault examination. (Def's Am. Mot. 13.) Defendant argues he requested the victim be present for trial through a subpoena, but the victim "could not be found and was unavailable for trial." (Def.'s Am. Mot.

22

14.) Defendant argues if the victim had testified, she would have stated their sexual encounter was consensual, and this would have changed the outcome of his trial.

In Crawford, the United States Supreme Court held "the confrontation clause of the Sixth Amendment excludes from evidence any out of court, testimonial statements unless the witness is found to be unavailable and the defense is provided a prior opportunity for cross-examination." Mencos v. State, 909 So. 2d 349, 351 (Fla. 4th DCA 2005) (citing Crawford, 541 U.S. at 68). See § 90.804(1), Fla. Stat. (2011) (explaining "unavailability as a witness"); State v. Contreras, 979 So. 2d 896, 904 (Fla. 2008) (holding statements child victim made to member of child protection team testimonial in nature).

. . . .

Foremost, this Court notes that even if the victim testified that her encounter with Defendant was consensual, such testimony would have been inconsequential to his conviction and would not have changed the outcome of his trial. Specifically, consent is a "prohibited defense" for the crime in which Defendant was convicted, and the victim's "misrepresentation of her age" cannot be raised as a valid defense to Lewd or Lascivious Battery. See § 800.04(2), (3), Fla. Stat. (2011) (stating, "[n]either the victim's lack of chastity nor the victim's consent is a defense to the crimes proscribed by this section." … "[t]he perpetrator's ignorance of the victim's age, the victim's misrepresentation of his or her age, or the perpetrator's bona fide belief of the victim's age cannot be raised as a defense in a prosecution under this section.").

Here, the record does not show that the trial court made the findings required by section 90.803(23) [for admitting hearsay statements by a child victim]. However, this Court finds Defendant's argument fails because Defendant could and should have raised this claim on direct appeal. See Hernandez v. State, 946 So. 2d 1270, 1274, 1271, 1277-86 (Fla. 2d DCA 2007). To the extent Defendant seeks to argue fundamental error occurred in this respect, this Court finds "[w]hen a postconviction claim is raised with an allegation that it is a matter of fundamental error, the defendant essentially invites the trial court … to dismiss the claim

as one that could and should have been resolved on direct appeal." <u>Hughes v. State</u>, 22 So. 3d 132, 135 (Fla. 2d DCA 2009).

Assuming <u>arguendo</u> this claim was not procedurally barred, it still fails. Defendant argues that trial counsel objected to Ms. Thomas's testimony. (Def.'s Am. Mot. 15.) However, as noted <u>supra</u>, Defendant represented himself <u>pro se</u> during trial. As a <u>pro se</u> party during trial, it was Defendant's responsibility to argue his confrontation rights were violated by Ms. Thomas's testimony, not counsel's responsibility. Defendant did not bring this issue to the trial court's attention prior to Ms. Thomas's testimony, nor did he object to Ms. Thomas's testimony. (Ex. E.) Defendant was given the opportunity to cross-examine Ms. Thomas, but he refrained from doing so. (Ex. E at 207.) Additionally, the record shows the State and the State's investigator made numerous attempts to locate the victim, but she could not be found. (Ex. D at 109-11; Ex. E at 121-27.) In view of the foregoing, therefore, this Court finds Defendant has failed to demonstrate he is entitled to the relief he seeks. Thus, Ground Six is denied.

(Resp. Ex. E1 at 33-35).

Petitioner appealed the denial of the Rule 3.850 motion to the First DCA. The First DCA affirmed the trial court's ruling without a written opinion. <u>Turner</u>, 225 So. 3d 807. Because the First DCA did not explain its decision, this Court "looks through" to the trial court's written decision to understand the First DCA's reasoning. <u>Wilson</u>, 138 S. Ct. at 1192.

To begin with, the trial court denied the claim based on an adequate and independent state procedural rule. The court rejected the claim "because Defendant could and should have raised this claim on direct appeal." (Resp. Ex. E1 at 34) (citation omitted); <u>accord</u> Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at

trial and, if properly preserved, on direct appeal of the judgment and sentence."). The Eleventh Circuit recognizes that the procedural requirements of Rule 3.850 constitute adequate and independent state procedural grounds for rejecting a claim. Whiddon v. Dugger, 894 F.2d 1266, 1267-68 (11th Cir. 1990). Petitioner has not overcome the default through a showing of cause-and-prejudice or actual innocence. As such, this claim is procedurally defaulted.

Alternatively, the state court reasonably denied this claim on the merits. In Crawford, the Supreme Court held that the Sixth Amendment's Confrontation Clause bars the admission of a witness's testimonial out-of-court statement, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. 541 U.S. at 53-54. However, Crawford claims raised in a collateral proceeding are subject to harmless error review under Brecht v. Abrahamson, 507 U.S. 619 (1993). See Grossman v. McDonough, 466 F.3d 1325, 1339-40 (11th Cir. 2006). Under Brecht, an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (internal quotation marks and citation omitted).

At trial, Ms. Thomas testified that during a post-assault evaluation, D.S. told her she had gone to a hotel with a man in his 40's, where they had intercourse three times. (Resp. Ex. B3 at 201-03). Petitioner never denied the substance of D.S.'s statements: he neither denied having sex with D.S. nor that D.S. was under the age of 16. (Id. at 252-57 (Petitioner's closing argument)).

Petitioner admitted that he was a "John" and that he had been soliciting prostitution. (Id.); (accord id. at 183-90 (testimony by Jacksonville Sheriff's Office Detective Donna Beasley that Petitioner admitted having sex with D.S.); id. at 218-30 (testimony by crime lab analyst Nicole Lee that DNA from D.S.'s vaginal swab matched Petitioner's DNA profile)). Petitioner's defense was that D.S. was a prostitute, that the sex was consensual, and that he did not know D.S. was underage or a runaway. (Id. at 252-57). In his current Petition, he claims that had he been able to confront D.S., "the jury and the court would have learned that the victim was a runaway who was prostituting to support herself; told the Petitioner that she was 18 years old; that she called the Petitioner for a ride; and that the sex was consensual." (Doc. 1 at 15).

As the trial court explained, none of these arguments is a defense to the charge of lewd and lascivious battery. Rather, the statute explicitly forecloses such defenses. Fla. Stat. § 800.04(2), (3) (2011). Thus, even if D.S. had testified that her encounter with Petitioner was consensual, or that she misrepresented her age, such testimony would not have changed the outcome as a matter of law. Thus, any Crawford violation regarding D.S. and her statements, assuming one occurred, was harmless under any standard.

In his Reply, Petitioner argues that such reasoning misapprehends his claim. (Doc. 30 at 14-15). He argues that he would have presented D.S.'s testimony not as a defense to the charge, but to lay the groundwork for a "jury

pardon." (<u>Id.</u>). A "jury pardon" is the jury's "inherent power" to acquit the defendant of a greater offense and convict him of a lesser one "even though the evidence supports both crimes." <u>Sanders v. State</u>, 946 So. 2d 953, 957 (Fla. 2006) (citations omitted). However, "the jury pardon remains a device without legal foundation." <u>Id.</u> at 958. "By definition, jury pardons violate the oath jurors must take before trial, as well as the instructions the trial court gives them." <u>Id.</u> As the Florida Supreme Court explained, "the jury must anchor its verdict in, and only in, the applicable law and the evidence presented." <u>Id.</u> To assume that, given the choice, a jury would acquit the defendant of a charge supported by sufficient evidence and instead convict of a lesser offense, "is to assume that the jury would disregard its oath and the trial court's instructions." <u>Id.</u> Thus, the Florida Supreme Court has held that a lawyer's failure to seek a jury pardon instruction, even if deficient, cannot satisfy <u>Strickland</u>'s prejudice prong because "any finding of prejudice … necessarily would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." <u>Id.</u> at 959.

Likewise, the notion that D.S.'s testimony might have laid the foundation for a jury pardon cannot establish prejudice from the <u>Crawford</u> error. A finding that the error was non-harmless would necessarily rest on the same faulty premise that "a jury would violate its oath, disregard the law, and ignore the

trial court's instructions." <u>Id.</u> However, a defendant is not entitled to "the luck of a lawless decisionmaker." <u>Strickland</u>, 466 U.S. at 695. That is equally true on collateral review regardless of whether the claim is ineffective assistance or a due process error. <u>See</u> <u>Bell v. Sec'y, Dep't of Corr.</u>, No. 6:14-cv-90-Orl-31DAB, 2016 WL 11689837, at *2 (M.D. Fla. May 20, 2016) (trial court's failure to give instruction on jury pardon was harmless under the <u>Brecht</u> standard).

Accordingly, relief on Ground Three is due to be denied. Ground Three is defaulted and, alternatively, the First DCA reasonably could have denied relief on the merits.

### D. Ground Four

Petitioner claims the trial court abused its discretion when it "abruptly cut off both the Petitioner and standby counsel, during trial, ordering them both [to] shut up, sit down, and not to object." (Doc. 1 at 17). He claims that the court's actions "resulted in key issues not being preserved for appellate review and denying the Petitioner a fair trial." (<u>Id.</u> at 17-18). According to Petitioner, he asked standby counsel to "take over" and object to the State's reference to D.S.'s hearsay statements during rebuttal argument, but the judge told counsel she was not to make any objections for Petitioner. (<u>Id.</u> at 18) (citing Pet. Ex. G, p. 242, lines 4-9; <u>see also</u> Resp. Ex. B3 at 259, lines 4-9). Afterward, Petitioner allegedly tried to object to D.S. not being available as a witness, but he claims "he was rudely told in front of the jury to sit down, and shut up or he would be

removed from the courtroom and the trial will continue without you." (Id.).
Petitioner claims that after the judge told him to be silent, "neither the
Petitioner [nor] his standby counsel were allowed to speak [for] the remainder
of the trial." (Id. at 19) (citing Pet. Ex. G, pp. 242-59; see also Resp. Ex. B3 at
259-76). Because he represented himself, Petitioner claims that the judge's
order not to speak for the rest of the proceeding deprived him of a fair trial.

Petitioner alleges that the "trial court's scolding of the Petitioner does not
appear on the face of the record due to the judge striking it from the record."
(Id. at 18). However, he claims that evidence of the scolding exists in three post-
trial motions alleging judicial bias, which Petitioner claims the court did not
resolve. (Id. at 18) (citing Pet. Ex. I) (Petitioner filed these motions pro se,
contrary to his claim that counsel filed them).

The part of trial where Petitioner alleges he was disallowed from
speaking anymore was near the end, during the State's rebuttal argument. By
that point, Petitioner had rested his case and given his closing argument.
During the State's rebuttal, the following exchange occurred:

> [PROSECUTOR]: Detective Beasley sat on that witness stand and
> told you that he admitted to her they had sex. Rachel Thomas sat
> on the witness stand and said they had sex – or not – that, excuse
> me, that [D.S.] had told her during the medical examination that
> they had had sexual intercourse in that motel.

> MS. HART [STANDBY COUNSEL]: Objection, Your Honor. That was not in evidence. There's no testimony as to it was Zachery Turner.[9]
>
> THE COURT:      Ms. Hart, you're not making any objections.
>
> MS. HART:         I'm sorry, Your Honor.
>
> [PROSECUTOR]: I'll rephrase that.
>
> She said – you can rely on your own memory as to what was said. But Rachel Thomas said that [D.S.] told her they had sex in the motel. And this was all confirmed by what Nickie Lee testified to, that his DNA profile, his semen was on [D.S.'s] vaginal swabs that were taken that afternoon.

(Resp. Ex. B3 at 258-59). The record contains no indication that the judge told Petitioner, in front of the jury, to "shut up, sit down, and not to object."

Respondent divides Ground Four into four subclaims: (1) whether the trial court abused its discretion by cutting off Petitioner and standby counsel and allegedly telling them to "shut up, sit down, and not to object"; (2) whether the trial court erred by not allowing standby counsel to object to hearsay, i.e., the State's rebuttal argument concerning D.S.'s statements to Ms. Thomas; (3) whether the trial court violated Petitioner's due process rights by allegedly silencing him when he objected to being tried without D.S.'s testimony; and (4)

---

9       According to Ms. Thomas, D.S. did not identify Petitioner as the man with whom she had sex. (Resp. Ex. B3 at 201-03). D.S. said only that she had gone to a hotel with a man in his 40's, where they had sex three times. (Id.). However, Detective Beasley testified that Petitioner admitted to having sex with D.S. (id. at 183-90), and lab analyst Nicole Lee testified that Petitioner's DNA matched male DNA taken from D.S.'s vaginal swabs (id. at 218-30).

whether the trial court failed to address Petitioner's motions alleging bias by the trial judge. (Doc. 25 at 21-22). Respondent argues that these subclaims are procedurally defaulted (id. at 21-25) and meritless (id. at 51-56).

Petitioner did not present any of these claims on direct appeal. (Resp. Ex. B9; Resp. Ex. B11; Resp. Ex. B13; Resp. Ex. B15).[10] He did claim, in his First Petition Alleging IAAC, that appellate counsel was deficient for failing to challenge (1) the State's reference to D.S.'s statements during rebuttal argument, and/or (2) the trial court's ruling that standby counsel could not object to the argument on Petitioner's behalf. (Resp. Ex. C1 at 45). But as Respondent points out, Petitioner couches Ground Four in terms of trial court error, whereas claims of ineffective assistance are separate and distinct. (Doc. 25 at 22-23); Pietri v. Fla. Dep't of Corr., 641 F.3d 1276, 1289 (11th Cir. 2011); LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 n.24 (11th Cir. 2005). Thus, Ground Four was not exhausted by the First Petition Alleging IAAC.

In ground four of his Rule 3.850 motion, Petitioner raised the subject of subclaims one through three as an allegation of trial court error. (Resp. Ex. E1 at 3-6). Although he alleged that the judge abruptly cut him off, he did not specifically allege that the judge told him to "shut up, sit down, and not to

---

[10]    In a pro se reply brief on direct appeal, Petitioner did attach as exhibits two pro se motions alleging judicial bias or misconduct. (Resp. Ex. B15). However, these attachments were not accompanied by any argument. (See id.).

object," or that the judge struck this exchange from the record. (<u>See</u> <u>id.</u>). He also did not raise subclaim four: that the trial court failed to address his motions alleging judicial bias. The court rejected ground four of the Rule 3.850 motion as barred, explaining that claims of trial court error are not cognizable in a motion for postconviction relief. (Resp. Ex. E1 at 27-28 & n.4).

Petitioner appealed the denial of the Rule 3.850 motion to the First DCA, which affirmed the trial court's ruling without explanation. <u>Turner</u>, 225 So. 3d 807. Because the First DCA did not explain its decision, this Court "looks through" to the trial court's opinion to understand the First DCA's reasoning. <u>Wilson</u>, 138 S. Ct. at 1192.

Ground Four is procedurally defaulted because Petitioner failed to raise any of the sub-claims on direct appeal. And, he also failed to present the fourth sub-claim (claiming the trial court failed to address the motions alleging judicial bias) in the Rule 3.850 motion as well. As the trial court explained in denying the Rule 3.850 motion, claims of trial court error must be raised on direct appeal and are not cognizable on collateral review. (Resp. Ex. E1 at 27-28); <u>accord</u> Fla. R. Crim. P. 3.850(c). By failing to present these issues on direct appeal, Petitioner denied "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan</u>, 526 U.S. at 845. Rule 3.850's procedural requirements are adequate and independent state procedural grounds on which

to deny a claim. <u>Whiddon</u>, 894 F.2d at 1267-68. Because the trial court applied an adequate and independent state procedural bar, federal habeas relief is not available. Petitioner has not shown he can overcome the default through a showing of cause-and-prejudice or actual innocence.[11]

Alternatively, if the First DCA reached the merits in affirming the denial of the Rule 3.850 motion, its opinion was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2). To the extent Petitioner claims the trial court erred by not allowing standby counsel to raise a hearsay objection regarding D.S.'s statements, "<u>Faretta</u> does not require a trial judge to permit 'hybrid' representation …. A defendant does not have a constitutional right to choreograph special appearances by counsel." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984); <u>see also</u> <u>United States v. LaChance</u>, 817 F.2d 1491, 1498 (11th Cir. 1987). Insofar as Petitioner claims the trial court violated his due process rights by preventing him from objecting to the State's failure to produce D.S. as a witness, such error (if one occurred) was harmless. As explained under Ground Three, Petitioner never denied having sex with D.S.

---

[11]     Contrary to Petitioner's claim that the trial court never addressed his post-trial motions alleging judicial bias (Doc. 1 at 18-19), the trial court denied the motions on January 9, 2012. (Resp. Ex. J8). In none of these motions did Petitioner identify his claims as arising under the <u>federal</u> Constitution. (Pet. Ex. I). Because Petitioner did not alert the court to the federal nature of his claims, subclaim four is unexhausted for this reason as well. <u>Baldwin</u>, 541 U.S. at 29.

or that D.S. was underage. Instead, he wanted to confront D.S. to support defenses that were foreclosed by law. See Fla. Stat. § 800.04(2), (3) (2011).

Moreover, the transcript contains no indication that the trial judge told Petitioner to "shut up, sit down, and not to object" for the rest of trial, let alone that she did so in front of the jury. Petitioner submits three affidavits from family members, written more than two years after trial, in which they state that the judge told Petitioner to "shut up" and sit down, and that the judge thought Petitioner was out looking for girls. (Pet. Ex. I at CM/ECF 5-7). These affidavits give no context for the judge's remarks, do not state that the judge said these things in the jury's presence, nor do they state that the judge ordered Petitioner to be silent for the rest of trial. Petitioner offers no support for his conclusory claim that the judge had her remarks stricken from the record.

Accordingly, the claims in Ground Four are procedurally defaulted as well as meritless. Relief is due to be denied.

### E. Ground Five

Finally, Petitioner argues that the trial court imposed a vindictive sentence to punish him for exercising his right to trial. (Doc. 1 at 21-22). He asserts that before trial, the State extended plea offers of 18 months, three years, and seven years in prison in exchange for a guilty plea. (Id. at 21). According to Petitioner, the trial judge "stopped short of affirmatively recommending that the Petitioner accept a plea offer," but that the judge made

statements that "constituted judicial participation in the plea negotiation process." (Id.). Petitioner claims that the judge's "comments differ[ed] from comments routinely made in explaining the state's offers." (Id. at 22). In the end, the court imposed the statutory maximum sentence of 15 years in prison. (Id.); see also Fla. Stat. §§ 800.04(4)(b), 775.082(3)(d). Petitioner contends that no aggravating factor could explain such a sentence. (Doc. 1 at 22). He asserts that the court imposed the maximum sentence to penalize him for going to trial, in violation of his rights under the Fifth and Fourteenth Amendments. (Id.).

Respondent argues that Petitioner procedurally defaulted this claim because he failed to raise an objection at sentencing and failed to raise the issue on direct appeal. (Doc. 28 at 2-8). Alternatively, Respondent argues that the state court reasonably denied this claim on the merits. (Id. at 8-12).

As Petitioner acknowledges, he did not raise this issue on direct appeal. (Doc. 1 at 22; Resp. Ex. B13). However, he did allege in ground five of his Rule 3.850 motion that the trial judge imposed a vindictive sentence. (Resp. Ex. E1 at 7-12). The court denied the claim as procedurally barred because claims of trial court error are not cognizable under Rule 3.850. (Id. at 27-28). In addition, the trial court denied the claim on the merits:

> As to Ground Five … this Court briefly addresses this argument to the extent Defendant seeks to argue the trial judge imposed a vindictive sentence upon him. This Court notes "the sentencing term 'vindictive' has become a 'term of art,' describing the legal effect of a given objective course of action, generally not implying

any personal or subjective animosity on the part of the trial judge." <u>Naim v. State</u>, 837 So. 2d 519, 520 (Fla. 3d DCA 2003). <u>See</u> <u>Frazier v. State</u>, 467 So. 2d 447 (Fla. 3d DCA 1985) (citations omitted). Indeed, a sentence is "vindictive" only when a defendant is punished by the trial judge for exercising his due process rights. <u>Wilson v. State</u>, 845 So. 2d 142, 150 (Fla. 2003). A presumption of vindictiveness in sentencing is rare, and surfaces only in situations where there exists a "reasonable likelihood" that an increase in sentence resulted from actual vindictiveness. <u>Alabama v. Smith</u>, 490 U.S. 794, 799 (1989). In fact, "[s]ince there is no presumption of vindictiveness, the burden of proving actual vindictiveness is on [the defendant]." <u>Allende v. State</u>, 942 So. 2d 950, 951 (Fla. 5th DCA 2006) (citing <u>Richardson v. State</u>, 821 So. 2d 428, 430 (Fla. 5th DCA 2002)).

In the instant case as to Ground Five, Defendant has failed to fulfill his burden of showing the trial judge punished him for exercising his due process rights. The only complaints Defendant raises are based on the trial court judge's reasons and justifications for imposing the sentence she did. After listening to the evidence and testimony presented by Defendant's attorney on behalf of Defendant during the sentencing hearing, the trial judge stated she also considered Defendant's Pre-Sentence Investigation Report and letters written on his behalf. (Ex. G at 31.) The trial court outlined the reasons for her sentence, including that Defendant took advantage of the victim's vulnerability and circumstances. (Ex. G at 31.) This Court finds the trial court's reasons for forming Defendant's sentence were lawful justifications in support of the sentence. Such do not demonstrate a vindictive sentence or that the judge was biased or prejudiced.

(Resp. Ex. E1 at 28-29).

Petitioner appealed the denial of the Rule 3.850 motion, but the First DCA affirmed without a written opinion. <u>Turner</u>, 225 So. 3d 807. Because the First DCA did not explain its decision, this Court looks through to the trial court's opinion to understand its reasoning. <u>Wilson</u>, 138 S. Ct. at 1192.

36

This claim is procedurally defaulted because the trial court denied relief based on an adequate and independent state procedural rule. In rejecting the vindictive sentencing claim, the court explained that allegations of trial court error must be raised on appeal and are not cognizable in a Rule 3.850 motion. (Resp. Ex. E1 at 27-28); accord Fla. R. Crim. P. 3.850(c). Because Rule 3.850's procedural requirements are adequate and independent state procedural grounds, Whiddon, 894 F.2d at 1267-68, this claim is barred from federal habeas review. Petitioner has not shown he can overcome the default under the cause and prejudice or actual innocence standards.

Alternatively, if the First DCA reached the merits in affirming the denial of Rule 3.850 relief, its decision was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was its decision based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2). "Due process forbids vindictive sentencing by increasing a defendant's sentence because the defendant exercised a constitutional right." Butler v. Sec'y, Dep't of Corr., No. 8:12-cv-56-T-27TGW, 2015 WL 859487, at *11 (M.D. Fla. Feb. 27, 2015) (citing North Carolina v. Pearce, 395 U.S. 711, 725 (1969)). However, the "imposition of a longer sentence than a defendant would have received had he pleaded guilty does not automatically amount to punishment for the defendant's exercising his right to stand trial." Creed v. Dep't of Corr., 330 F. App'x 771, 773 (11th Cir. 2009) (citing Frank v. Blackburn, 646 F.2d 873, 882-

37

85 (5th Cir. 1980), and <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978)). "A trial judge may reasonably increase a defendant's sentence after trial because the trial gives the judge the benefit of hearing testimony, becoming aware of the facts of the case, and understanding 'the flavor of the event and the impact upon any victims.'" <u>Id.</u> (quoting <u>Frank</u>, 646 F.2d at 885).

Such is the case here. In explaining the sentence, the judge recounted:

> [I]t's clear you didn't care that [D.S.] was a poor, young, troubled girl, who another much younger man, maybe half your age, could see was a troubled young woman out on the street. You picked her up, she was – I think you said at one point, something about trying to get her food or whatever, so you knew she was hungry, you knew she was vulnerable, and you took advantage of that, of a 14 year old girl, with children older than that yourself, Mr. Turner.
>
> It's not just a poor decision. This is an evil crime, to take advantage of a troubled teen like that.

(Resp. Ex. B1 at 204). There is no evidence that the trial judge imposed the sentence in retaliation for Petitioner exercising his right to trial.[12]

Ground Five is procedurally defaulted, and alternatively, does not warrant relief under 28 U.S.C. § 2254(d). As such, relief is due to be denied.

---

[12] To the extent Petitioner alleges that the trial judge interjected herself into plea negotiations, the record refutes that claim. Before jury selection, the court reviewed the plea offers, advised Petitioner about his plea options, and notified Petitioner about the potential penalties. (Doc. 1-5 at CM/ECF 25-28). The trial judge specifically advised Petitioner "I don't get involved in negotiations." (<u>Id.</u> at CM/ECF 27).

## V.    Conclusion

The Court has reviewed each of Petitioner's claims and concludes that none merits relief under 28 U.S.C. § 2254.

Accordingly, it is hereby **ORDERED:**

1. Petitioner Zachery Keith Turner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**

2. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA).  Because the Court has determined that a COA is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.[13]

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of August, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Zachery Keith Turner

---

[13] The Court should issue a COA only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). After consideration of the record as a whole, the Court will deny a COA.